JOSÉ RIVERA SANTANA, representado por ROSARIO RIVERA OLIVERAS y CARMEN SANTANA RIVERA, demandante y recurrido, *v.* UNIVERSIDAD DE PUERTO RICO, ARTURO MORALES CARRIÓN por sí y como PRESIDENTE DE LA UNIVERSIDAD DE PUERTO RICO; ISMAEL RODRÍGUEZ BOU por sí y como RECTOR DEL RECINTO DE RÍO PIEDRAS DE LA UNIVERSIDAD DE PUERTO RICO; FEDERICO M. MATHEU por sí y como DIRECTOR DEL COLEGIO UNIVERSITARIO DE HUMACAO, demandados y recurrentes.

*Número:* R-76-339    *Resuelto:* 31 de enero de 1977

*José A. Andréu García, Manuel E. Andréu García* y *Jaime A. Rodríguez Lecoeur,* abogados de los recurrentes; *Ana Rosa Biascoechea, Pedro J. Varela, María Dolores Fernós, Pedro J. Saade, Luis A. Saade* y *Sonia A. Rodríguez,* abogados del recurrido.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

El recurrido José Rivera Santana, en unión a otros cuatro estudiantes del Colegio Regional de Humacao de la Universidad de Puerto Rico—previo trámites disciplinarios plenarios ante la Junta de Disciplina de dicho Colegio—fue

hallado incurso de violar el Reglamento General de Estudiantes de la Universidad por actos realizados el 27 de febrero de 1975; dicha Junta recomendó la suspensión de los estudiantes por un período que no excediera un año académico.

El entonces Director y Decano Interino del Colegio, profesor Juan J. Adrover, aceptó tal recomendación y el 29 de agosto decretó suspensiones contra tres estudiantes de apellidos Coss, Sánchez y Vélez, pero no actuó en torno al recurrido Rivera Santana ni al otro estudiante nombrado Torres ya que éstos se habían trasladado al Recinto Universitario de Río Piedras para proseguir sus estudios y dicho funcionario estimó que carecía de jurisdicción y autoridad para imponerles sanciones. (¹) Notificó tales decisiones y remitió copia del Informe de la Junta al Rector de la Administración de Colegios Regionales, Dr. Hermán Sulsona, quien los envió al Presidente de la Universidad de Puerto Rico, Dr. Arturo Morales Carrión, para el trámite pertinente. Este último, el 24 de septiembre los refiere al Rector del Recinto Universitario de Río Piedras, Dr. Ismael Rodríguez Bou, para los "efectos pertinentes" en relación al recurrido Rivera Santana, quien se abstuvo de actuar por entender que no habiéndose suspendido no había que poner en vigor ninguna determinación en su Recinto ni le correspondía decretar tal sanción.

Así las cosas, el 26 de enero de 1976 se nombra Director del Colegio Regional de Humacao, en propiedad, al profesor Federico M. Matheu. A dicha fecha, el recurrido Rivera San-

---

(¹) Se estipuló que el 9 de septiembre de 1975, los tres estudiantes suspendidos radicaron junto a José Rivera Santana y Carlos Torres una petición de *Injunction* contra la U.P.R. en el Tribunal Superior de Puerto Rico, Sala de Humacao (Civil Núm. CS-75-2492), impugnando la suspensión de los estudiantes debido a que los Artículos del Reglamento General de Estudiantes cuya violación se impugnaban eran inconstitucionales de su faz y en su aplicación, y debido a que las determinaciones de hecho y conclusiones de derecho contenidas en el Informe de la Junta de Disciplina constituían una apreciación errónea de la prueba y no estaban sostenidas por la misma. Dicha acción está aún pendiente de resolución. Desconocemos las resultancias de dicho pleito.

tana continuaba sus estudios en el Recinto de Río Piedras sin que se le impusiera sanción alguna o se le formularan cargos adicionales. El 4 de febrero de 1976, en unión a los otros estudiantes previamente referidos, interpuso apelación ante el Presidente de la Universidad contra la decisión del Profesor Adrover del 29 de agosto de 1975. Mediante Resolución emitida el 19 de febrero, el Presidente ratificó el dictamen en cuanto a los estudiantes suspendidos y respecto a Rivera Santana rechazó la apelación (1) porque no había sido objeto de determinación alguna; y (2) haber incidido en incuria al efectuar tardíamente la apelación.

Subsiguientemente, el 16 de marzo de 1976, el nuevo Director del Colegio Regional de Humacao, Prof. Matheu, notificó al recurrido Rivera Santana—siguiendo las recomendaciones antes mencionadas de la Junta de Disciplina—lo siguiente:

"Por la autoridad que me confieren las leyes y reglamentos de la Universidad de Puerto Rico, le comunico por este medio que, a tenor con el mencionado informe de la Junta de Disciplina, queda usted suspendido de la Universidad de Puerto Rico por el período comprendido entre el 1 de junio de 1976 hasta agosto de 1977.

Desde el momento de su suspensión y no siendo ya usted estudiante del Colegio Universitario de Humacao queda definitiva y terminantemente prohibida su entrada a los terrenos, dependencias y facilidades bajo el control de la Universidad de Puerto Rico.

Le apercibimos además, de que usted estará en probatoria disciplinaria por el resto del corriente semestre académico (Segundo Semestre 1975–76), por lo cual deberá usted entender que de incurrir en nuevas violaciones al Reglamento General de Estudiantes de la Universidad de Puerto Rico, el inicio de la suspensión aquí impuesta, comenzará a partir de la fecha en que se determine que usted ha incurrido en la nueva violación."

Por encomienda de la Presidencia de la Universidad, el 23 de abril de 1976, el Rector de Río Piedras notificó esta decisión al recurrido expresándole que la sanción impuesta

por el Director del Colegio Regional de Humacao tenía vigencia en el Recinto de Río Piedras. Es de notar que para esta fecha, los estudiantes suspendidos habían sido readmitidos en el Colegio Regional de Humacao.

Posteriormente, Rivera Santana formuló demanda de *injunction* bajo las disposiciones de la Ley Núm. 12 de 8 de agosto de 1974 (32 L.P.R.A. sec. 3524) alegando violaciones a sus derechos civiles. Previo los trámites de rigor, el Tribunal Superior, Sala de San Juan, dictó sentencia concediendo un *injunction* permanente ordenando la inmediata admisión de Santana. A solicitud de la Universidad, acordamos revisar.

La tesis jurídica de la ilustrada sala sentenciadora, promovida por el recurrido ante nos, descansa sobre la premisa básica de que tanto el texto de la Ley de la Universidad de Puerto Rico (Núm. 1 de 20 de enero de 1966; 18 L.P.R.A. sec. 601 *et seq.*), como su historial legislativo, establecen que:

"El Recinto de Río Piedras como el del Colegio Universitario, de Humacao, como los demás, son unidades autónomas para efectos académicos y administrativos dentro del sistema universitario. Tanto el Rector del Recinto de Río Piedras como el Director del Colegio Universitario de Humacao como los demás rectores pueden ejercer su autoridad administrativa exclusivamente dentro del ámbito de su respectiva unidad institucional. Ejercer dicha autoridad fuera de estos límites constituye un acto no autorizado por la ley de la Universidad, y por la intención legislativa.

Los organismos administrativos (y corporaciones públicas como la Universidad de Puerto Rico) no tienen más poderes que los expresamente delegados por la Legislatura. . . .

Al imponerle a un estudiante una sanción disciplinaria, el Director o Rector está ejerciendo su autoridad administrativa. Para que ésta se ejerza dentro del ámbito de su correspondiente unidad institucional, dicha sanción disciplinaria puede recaer únicamente sobre un estudiante matriculado en dicha unidad. De este funcionario universitario intentar imponer sanciones a un estudiante de otro recinto o colegio, aquél estaría actuando fuera de los límites jurisdiccionales concedidos por ley y estaría

violando la autonomía concedida también por ley a la unidad institucional donde dicho estudiante está matriculado. . . .

En el sistema universitario, el estudiante cae bajo la jurisdicción de la unidad institucional donde está matriculado y de hecho, estudia. La mera presencia física en otros lugares dentro de dicho sistema no confiere jurisdicción para ser procesado y ser objeto de una determinación administrativa disciplinaria."

Y finalmente sostuvo que:

"El efecto de dicho traslado fue sacar al demandante fuera de la jurisdicción académica y administrativa del Colegio Universitario de Humacao. De ahí en adelante, cualquier proceso disciplinario en contra del demandante, surgido como consecuencia de actuaciones llevadas a cabo en cualquier lugar dentro del sistema universitario, tenía que efectuarse en el Recinto de Río Piedras y correspondía al Rector de dicho Recinto imponer las sanciones disciplinarias al demandante."

El razonamiento expuesto no puede prevalecer. La Ley de la Universidad que nos ocupa no fue redactada para crear barreras jurisdiccionales infranqueables hace tiempo salvadas aun en la práctica forense judicial; al contrario intentó modernizar y agilizar en todos sus extremos la vida institucional de sus distintas unidades. El sistema universitario creado ". . . tiene como base unidades institucionales con poderes definidos. Estas unidades institucionales o recintos gozan de autonomía en su administración y desarrollo interno y de cierta flexibilidad que permita su crecimiento. No obstante, depende formalmente de un ejecutivo central y de una Junta Universitaria." 19 *Diario de Sesiones* (Extraordinaria), pág. 279 (1965).

La autonomía académica y administrativa reconocida a los distintos recintos y otras unidades institucionales está enmarcada y afectada por las normas dispuestas en la ley ". . . y las que se fijen en el reglamento de la Universidad o resoluciones del Consejo": Art. 4 (18 L.P.R.A. sec. 603); ya que "El rector y el director ejercerán la autoridad administrativa y académica dentro del ámbito de su respectiva unidad insti-

tucional, *conforme a lo dispuesto en este Capítulo y a las normas y reglamentos universitarios. . . .*" Art. 7 (18 L.P.R.A. sec. 606(b)) (Bastardillas nuestras.)

El historial legislativo refleja que "[e]l Consejo de Educación Superior que por esta ley se crea, será la Junta de Gobierno de la Universidad *y el organismo en el cual residirá el poder y el interés público en la educación al nivel superior. Por tal razón, se le confiere la máxima autoridad administrativa sobre la Institución* y el poder de fomentar la educación superior de conformidad con las normas que a tal efecto adopte. (Bastardillas nuestras.) *Id.*

A tono con la facultad de organismo máximo de aprobar normas reglamentarias, el Consejo de Educación Superior, el 31 de julio de 1974 adoptó el siguiente acuerdo:

"Los estudiantes suspendidos de una institución de nivel universitario por determinaciones administrativas y/o académicas o en proceso de acción disciplinaria, no se admitirán en ninguna dependencia del Sistema Universitario mientras dure el período de suspensión de la institución de origen o se tome una determinación definitiva en el caso de acción disciplinaria."

En virtud de este acuerdo fue errónea la determinación del Decano Interino Adrover de que carecía de autoridad para imponer al recurrido la sanción correspondiente por el hecho de encontrarse cursando estudios en el Recinto de Río Piedras. La jurisdicción surgió durante el período en que aquél estudiaba en el Recinto de Humacao, circunstancia que no quedó afectada por el traslado a otra dependencia. Aparentemente se confundieron los conceptos de autoridad para disciplinar *vis a vis* la facultad para implementar tal dictamen; existe una palpable diferencia entre la disposición inicial de sanciones a un estudiante por acciones en el recinto en que las mismas se originan y la implementación posterior de tales sanciones en otras facilidades universitarias. Es interesante notar que el Art. 11 del Reglamento General de Estudiantes aprobado por el Consejo en 30 de marzo de 1968

claramente contempla y prevee la imposición de suspensión provisional o definitiva de todo el sistema universitario y no de un recinto o colegio en particular.

*Por los fundamentos expuestos se dictará Sentencia revocando el injunction permanente decretado y en su lugar declarándose sin lugar la demanda.*